The opinion of the court was delivered by
DeBlanc, J.
Edward and Henry Dee are the children of Martin Dee and Margaret Joyce, both deceased. At the death of their mother, *218 their father was confirmed natural tutor. In that capacity, he filed, an account which was duly homologated, and — on the 17th of -August 1869, to secure the balance shown by that account — he executed a special mortgage which contains the following recital
“Now the condition of this special mortgage is such, that whereas-the said Martin Dee has been confirmed and duly.sworn as the natural tutor of his minor children, Edward and Henry Dee, the issue of his marriage with Margaret Joyce, deceased ; and, whereas, the rights and property of the said minors have been liquidated by a decree of the said Second District Court for the parish of Orleans bearing date, the 5th day of August,-1869, in the sum of one thousand six hundred and seven 01J-100 dollars, as the whole will more fully appear by reference to the proceedings had in the-succession of ’the said Mrs. Margaret Joyce, deceased wife of Martin Dee, No. 32,974 of the docket of said court — Second District, parish of Orleans,
“ Therefore, if the said Martin Dee shall well and truly perform and faithfully discharge all his duties as natural tutor-of the above named Edward and Henry Dee, his minor children, and each of them,, and shall, at the expiration of said tutorship, render unto each of them a just, true, faithful and correct ,account..of the share of each-in the said sum of one thousand six hundred and seven 04J-100 dollars, and of all interest to accrue thereon, and if he shall be discharged in due course of law from his said tutorship, then this mortgage shall cease to have effect; and if otherwise, it shall remain in full force and vigor up to the amount of and to secure the said sum of one thousand six hundred and seven OAJ-lOO dollars, and twenty-five per cént thereon, and for the share of each of said minors in said sum and interest as aforesaid ; and the said Martin Dee binds himself not to alienate, deteriorate or encumber the said property to the prejudice of this mortgage.”
On the 20th of August 1869, Martin Dee mortgaged in favor of George W. Doll, to secure a loan of five thousand dollar's, the same property which — three days before — he had mortgaged to secure the rights of his wards and the faithful discharge of his duties as tutor.
Martin Doe died in November 1869, and — on the 30th of August 1870 — the executor of his will filed a petition in which he represented that his succession was very much in debt, and that a sale of the property thereto belonging ought to be made to satisfy its liabilities. The sale was ordered by the court, and — -on the 3-1 of October 1870 — the property specially mortgaged to Edward and Henry Dee and — subsequently — to George W. Doll was adjudicated to the latter for fifteen hundred dollars, which — according to the condition of the sale — were to be paid cash, but which — less a fraction — the adjudicatee retained in his hands and applied in part paymeht of his own claim.-- •
*219 On the 21st of October 1870, Edward Linn — the plaintiff — purchased from George W. Doll, for three thousand dollars, the property so adjudicated to his vendor, and his and his vendor’s title were duly recorded. On the 20th of December 1876, in a proceeding by rule instituted against George W. Doll alone, in the Second District Oourt, the title transferred by him to plaintiff and which he had — apparently at least — acquired on'the 3d of October 1870, was set aside and annulled.
On the 18th of May, 1877, ignoring plaintiff’s title, defendants obtained from the Sixth District Oourt of the parish of Orleans, a writ of, seizure and sale against the property which — more than -six years before-had passed from Doll’s possession into that of Edward Linn, who-opposes the execution of said writ on the grounds : .
1. That defendants’ special mortgage was extinguished by the sale of October 1870, and their rights transferred from the mortgaged property to the proceeds of that sale.
2. That the act by which said mortgage is evidenced does not authorize proceedings via executiva.
3. That — if the mortgage exists — plaintiff, as a purchaser in good faith — -is entitled to compensation for his improvements.
I.
Had George W. Doll paid the price of the adjudication made to him on the 3d day of October 1870, there can be no doubt that said adjudication would have transferred, from the property to the proceeds of the sale, the rights which defendants could previously have exercised against the property itself ; but Doll did not comply with the conditions of the sale, refused to pay the price of the adjudication, and did not even attempt to oppose or resist the decree by which his title was can-celled. As to him, that decree remains in full force ; but as it neither did nor could impair the title of Edward Linn, whq was not a par-ty to the action in nullity, and who — so far as we are informed by the .transcript — acquired in good faith from George W. Doll, we refrain from expressing any opinion on either the failure and refusal of the latter to comply with the conditions of the adjudication of the 3d of October, or the effects of the decree by which it was annulled.
II.
Did the defendants’ rights arise from an act importing a confession of judgment, and could they have resorted to the executory process ? An appeal would have been the proper remedy to test this question— 25th A. &0, 26 A. 709. As, however, this objection is — not only not urged, but inferentially waived by. the answer to plaintiff’s injunction, we proceed to examine and decide.it.
What are the objects of a special mortgage, such as that given by Martin Dee in favor of his minor children ? To secure the rights and *220 property of said children, the faithful discharge of the tutor’s duties, and — mainly—to release from the legal and general mortgage arising from the tutorship, the whole of the tutor’s property not affected by the special mortgage. R. O. C. 325.
When such a mortgage is given to secure the rights of two or more ■minors, in what way must it be enforced ? “ On attaining the age of majority, or being emancipated, any one of the mortgagees, may proceed to the sale of the property mortgaged, after having discussed the other property of the debtor, in the manner following:
“ A family meeting shall be convened on behalf of the remaining minors to consider-whether the property mortgaged is sufficient to satisfy all demands on it, in favor both of the major and minor heirs. If they should be of opinion that the property is sufficient to satisfy all demands, they shall advise that so much of the property mortgaged as will satisfy the demand of the major be sold — if susceptible of division — and the property then sold shall be free from the mortgage in favor of the remaining minors.”
“ If the meeting shall be of opinion that the property mortgaged is not sufficient to satisfy the demands of all the heirs, or that it is not susceptible of division, the whole of the mortgaged property shall be sold, and shall be released from the mortgage in favor of the major and minors, etc.” R. C. C. 333.
In this instance, though one of the mortgagees is still under age, these formalities were not complied with, and if required in an action against the tutor and whilst the mortgaged property is still in his possession, they should certainly precede an action against a third possessor.
Nor is this all: the expenses for the support and education of a minor should never exceed, but may and do often absorb his revenues, and the final account which the tutor or his legal representatives are bound to give of his administration at the expiration of the tutorship, can alone conclusively fix the amount due by him to his wards. As to them and to third parties, the judgments homologating either his annual accounts or the liquidation which precedes the execution of the special mortgage which he is allowed to give in lieu of the general mortgage arising from the tutorship, are but prima facie evidence of the correctness of the homologated accounts — R. C. C. 356, 357 (350); and as they do not import a confession of judgment for any finally determined amount, neither the annual accounts nor the liquidation referred to can be the basis of an executory proceeding and authorize the issuance of a writ- of seizure and sale.
III.
In order to reduce the chances of a procrastination of this contro *221 versy, we consider it proper to state that a third possessor evicted by a mortgage creditor can claim, for his expenses and improvements, only to the amount of the increased value which is the redhlt of the improvements made. That increased value is the difference between what the immovable would be worth on the day of the adjudication and eviction under the seizure, if the improvements had not been made, and the price -which it brings with the improvements. When the expenses incurred by the third possessor are less than the increased value, he can then recover but an amount equal to his expenses and not one equal to the increased value: but — from the date of the service on the third possessor of the notification of the order of seizure, he is liable for the fruits and income of the mortgaged property.
C. N. 2175 ; C. C. 3408. (3371).
Gilbert, Codes Annotés, p.p. 1006-1007.
It is, therefore, ordered, adjudged and decreed that the judgment appealed from is annulled, avoided and reversed, and plaintiff’s injunction perpetuated at the costs of defendants in both courts.
Rehearing refused.